IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BRIAN E. WOODARD, #1972608,<br>     Petitioner,<br><br>v.<br><br>LORIE DAVIS, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Div.,<br>     Respondent. | §<br>§<br>§<br>§   CIVIL CASE NO. 3:16-CV-2974-C-BK<br>§<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the petition for writ of habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate judge. Upon review of the relevant pleadings and applicable law, and for the reasons that follow, the petition should be **DENIED**.

**I. BACKGROUND**

Following a bench trial, Petitioner was convicted of possession of 400 grams or more of a controlled substance and sentenced to 40 years in prison. *State v. Woodward*, No. 29390 (354th Dist. Court, Hunt Cty., Tex., Dec. 4, 2014), *aff'd*, No. 06-14-00221-CR, 2015 WL 4734937, *1 (Tex. App.—Texarkana, Aug. 11, 2015, no pet.). The Court of Criminal Appeals subsequently denied habeas relief. *Ex parte Woodard*, No. 84,571-01 (Tex. Crim. App. Feb. 17, 2016) (denying relief without written order); Doc. 26-19 at 1.[1]

On August 25, 2016, Petitioner filed the instant *pro se* federal habeas petition, asserting ineffective assistance of counsel, illegal search and seizure, wrongful prosecution, and trial error.

---

[1] The state habeas court record is available at Doc. 26-20, and the reporter's record (R.R.) is available at Doc. 26-2 through Doc. 26-12.

Doc. 19 at 6-7 (*Amended Petition*); Doc. 20 at 1-15 (*Amended Brief*).  Respondent argues that Petitioner's claim of ineffective assistance of counsel at trial due to counsel's failure to obtain a ruling on his motion to suppress is procedurally barred, and that Petitioner's remaining claims lack merit. Doc. 27.  Petitioner has filed a reply, along with motions for summary judgment and for a writ of habeas corpus.  Doc. 28; Doc. 29; Doc. 30.

The following summary of the facts is taken verbatim from the unpublished opinion issued on the direct appeal of this case:

> As Brian Eugene Woodard motored along on Interstate Highway 30 (I–30) through Hunt County, Texas, May 11, 2013, he was stopped by Zane Rhone, a Texas Department of Public Safety Trooper.
>
> * * *
>
> At trial, Rhone testified that the circumstance that first drew his attention to the car piloted by Woodard was that it was one of two very clean automobiles with out-of-state license plates that were traveling quite close together.  When Rhone first spotted these vehicles, he pulled into the traffic on I–30 and began to follow them, pulling in the line of traffic behind Woodard's automobile.  Rhone said that he then noticed that the frame around the license plate of Woodard's car obscured more than fifty percent of the name of the state issuing the license plate for the car and that Woodward was following too closely behind the car in front of him to safely avoid a collision.  Observing what he believed to be traffic violations, Rhone instituted a stop of Woodard's car.
>
> Several things raised Rhone's suspicions about Woodard and his passenger, Marlo Donta Persons.  First, upon approaching Woodard's car, he noticed a strong aroma of air fresheners in the car and observed that there was an air freshener package at each of the air conditioner vents in the automobile.  Rhone's experience and training alerted him to the practice by drug transporters or users to liberally use air fresheners in cars in an effort to mask the odor of illicit drugs.  Second, upon questioning Persons and Woodard separately, they gave Rhone conflicting stories about the nature of their trip from Ohio.  Third, after inputting Persons' name into the computer in his patrol car, Rhone was informed that Persons had a reputation of being violent and a history of being "armed and dangerous."
>
> Upon making these observations and receiving this report, Rhone asked for permission to search Woodard's car.  Receiving consent, the search was conducted,

>which resulted in the discovery of the cocaine . . . and of a loaded .22 caliber pistol in the glove compartment.

Woodard, 2015 WL 4734937, at *1-2 (footnotes omitted).

## II. ANALYSIS

### A. Claim 1(e)[2] is Unexhausted and Procedurally-Barred

A petitioner must fully exhaust state remedies by fairly presenting the factual and legal basis of any claim to the highest state court for review before seeking federal habeas relief. *See* 28 U.S.C. § 2254(b); *Morris v. Dretke*, 413 F.3d 484, 490-91 (5th Cir. 2005). A Texas prisoner may satisfy that requirement by presenting both the factual and legal substance of his claims to the Texas Court of Criminal Appeals in a petition for discretionary review or in an application for a state writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). Failure to exhaust is generally a procedural bar to federal habeas review, although the federal court may excuse the bar if the petitioner can demonstrate either cause or prejudice for the default or that the court's failure to consider the claims will result in a fundamental miscarriage of justice. *Ries v. Quarterman*, 522 F.3d 517, 523-24 (5th Cir. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

A comparison of the ineffective assistance claims raised in Petitioner's state application, Doc. 26-20 at 10, with those he alleges in the instant amended petition, Doc. 20 at 8 (specifically, the last three lines), reveals that Petitioner did not exhaust the present claim. In his state

---

[2] Because Petitioner raises grounds in both his amended petition and brief in support, for the sake of clarity, the Court adopts the summary of the grounds as set out in Respondent's answer and, thus, refers to each claim by the number associated with it in Respondent's answer, Doc. 27 at 2.

application, Petitioner alleged that counsel failed <u>to file</u> a proper motion to suppress, as distinguished from his claim here that counsel was ineffective due to his failure <u>to obtain a ruling on</u> the motion to suppress. Moreover, Petitioner does not even attempt to refute the State's argument that he failed to exhaust the instant ineffective assistance of counsel claim, instead only rearguing its merits. Doc. 28 at 7-8.

Petitioner's failure to exhaust state court remedies constitutes a procedural default that bars this Court from considering his claim of ineffective assistance of counsel. *Morris*, 413 F.3d at 491-92; *Ries*, 522 F.3d at 523-24. Furthermore, Petitioner has not alleged or shown cause for the default and actual prejudice, or that a fundamental miscarriage of justice would occur if the Court were to refuse to consider his claim. *See Coleman*, 501 U.S. at 750; *see also Martinez v. Ryan*, 566 U.S. 1, 13, (2012) ("only where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default"). Indeed, Petitioner's reply is silent about his failure to exhaust. Doc. 28.

In sum, it is apparent from a review of the record that Petitioner had the opportunity to raise in his state application all the claims he presents here, including his current ineffective assistance of counsel claim, and simply failed to do so. Accordingly, Claim 1(e) should be dismissed with prejudice as unexhausted and procedurally barred.

### B. Claims 2-4 – Relating to the Legality of the Traffic Stop – Are Barred

In three related claims, Petitioner alleges that: (1) he was denied due process when the traffic stop was initiated in violation of the Fourteenth Amendment; (2) due to the illegality of the traffic stop, the State's prosecution of him was improper; and (3) the trial court actions constituted abuse of discretion in light of the illegality of the traffic stop. Doc. 19 at 6-7.

Throughout his pleadings, Petitioner argues that it was improper to use "a Texas Statute specifically meant for Texas residents to initiate an illegal traffic stop on an Ohio resident." Doc. 19 at 7; *see also* Doc. 20 at 12.  He claims that, as such, he "did not commit a traffic violation," Doc. 19 at 6, so the traffic stop and subsequent search were unconstitutional under both the Fourth and the Fourteenth Amendments.  Doc. 28 at 9.

      Undisputedly, the gist of Petitioner's arguments is the validity of the traffic stop and subsequent search under the Fourth Amendment, therefore, his claims are barred from federal habeas review.  *Stone v. Powell*, 428 U.S. 465, 494 (1976) (holding Fourth Amendment claims are barred from federal habeas consideration if the petitioner had a full and fair opportunity to litigate his claims); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (interpreting "'opportunity for full and fair litigation' to mean just that: 'an opportunity.'").  Texas procedure affords all defendants an opportunity to pursue Fourth Amendment claims at the trial and appellate level.  As such, Petitioner "received a full and fair opportunity to litigate" his illegal-traffic-stop claims, as required under *Stone*, regardless of whether he took advantage of that opportunity.  *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012) ("the *Stone* bar applies even where the petitioner did not avail himself of the litigating opportunity provided by the state courts").  Accordingly, Claims 2 through 4 are barred from habeas review.

### C. Petitioner's Remaining Claims Also Lack Merit

#### 1. Standard

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). However, that burden is "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011), because the state court's decision is reviewed under a "highly deferential" standard and afforded the "benefit of the doubt." *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted). Section 2254(d) "was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (*quoting Richter*, 562 U.S. at 102)). Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision," federal habeas relief should not be granted. *Richter*, 562 U.S. at 102 (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *see Richter*, 562 U.S. at 101 ("an *unreasonable* application of federal

law is different from an *incorrect* application of federal law.") (quotations and quoted case omitted; emphasis in original). The deferential standard of review applies even where the state court, as in this case, summarily denied all claims without written order. *See Richter*, 562 U.S. at 100 ("§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

The Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted). In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. 86, 101.

To establish ineffective assistance of counsel at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687. The Court need not address both components if the petitioner makes an insufficient showing on one. *Id.* at 697. To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy. *Id.* at 689. Under *Strickland*'s prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 2. Ineffective Assistance of Counsel at Trial

### a. Failure to Argue that Traffic Stop was Illegal – Claims 1(a-c)

In three grounds, Petitioner asserts trial counsel rendered ineffective assistance when he failed to argue in the trial court that because Petitioner had not violated any traffic laws of Ohio, his state of legal residence, the traffic stop based on Texas law was illegal. Doc. 19 at 6; Doc. 20 at 2-5. He basically argues that Texas Transportation Code section 504.945(a)(7)(B), which makes it a traffic offense to display an obscured license plate, did not apply to him because his car was registered in Ohio and in compliance with Ohio Revised Code 4501:1-1-13, which permits the state's name to be obscured by the dealership bracket. Doc. 20 at 3-6; Doc. 28 at 3-4. Petitioner also claims counsel failed to research Ohio traffic laws sufficiently and to challenge the legality of the traffic stop under the Fourteenth Amendment. Doc. 20 at 5-8.

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment" and its "ultimate touchstone of … 'reasonableness.'" *Heien v. North Carolina,* --- U.S. ---, 135 S. Ct. 530 (2014). Ordinarily, the decision to stop an automobile is reasonable as long as the police has "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); *see also United States v. Raney*, 633 F.3d 385, 390 (5th Cir. 2011) (applying *Whren* and concluding constitutionality of traffic stop depends "on whether [the defendant] violated Texas law" by committing one or more traffic violations). Routine traffic stops can also be justified by the reasonable suspicion of a violation under the framework in *Terry v. Ohio*, 392 U.S. 1 (1968). *See United States v. Brigham,* 382 F.3d 500, 506 (5th Cir. 2004); *United States v. Benavides*, 291 F. App'x 603, 606-07 (5th Cir. 2008). In this context,

officers need only have "reasonable suspicion"—that is, "a particularized and objective basis for suspecting the particular person stopped" was breaking the law. *Heien*, 135 S. Ct. at 536. In this case, the evidence supports a finding that Trooper Rhone had reason to suspect that traffic violations had occurred before initiating the stop of Petitioner's vehicle. Trooper Rhone testified that part of the state's name on the license plate was obscured, and that Petitioner also was following the vehicle in front of him too closely.[3] Doc. 26-9 at 12-16 (8 R.R.). The following-too-closely violation alone established probable cause to stop Petitioner's vehicle. That Trooper Rhone did not mention in the police report that Petitioner was following the vehicle in front of him too closely, is of no moment. As the record reflects, the trooper was subjected to rigorous questioning regarding his omission. Doc. 26-9 at 66. Also, unlike the officer in *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005), Trooper Rhone did not simply testify to his opinion, he also testified about his detailed computations that resulted in his opinion that Petitioner was following the other car too closely. Doc. 26-9 at 14-16.

In addition, Petitioner's argument that section 504.945(a)(7)(B) did not apply to him because he was an Ohio resident driving a car registered in Ohio, is unsupported and erroneous. The state statute in question provides that "[a] person commits an offense if the person attaches to or displays on a motor vehicle a license plate that . . . has a coating, covering, protective substance, or other material that . . . alters or obscures one-half or more of the name of the state

---

[3] *See* TEX. TRANSP. CODE ANN. § 545.062(a) (West. 2017) ("An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.").

in which the vehicle is registered." TEX. TRANSP. CODE ANN. § 504.945(a)(7)(B) (West 2017). The statute does not except or exempt foreign citizens or vehicles registered in other states; indeed, the phrase "name of the state in which the vehicle is registered" suggests that it applies to license plates issued by any state.

In any event, "the legality of the stop does not depend on the State proving that the individual who was stopped actually committed a traffic offense. Instead, the legality of the stop may be proven by evidence that shows an objectively reasonable officer would have believed that an offense was in progress, given the facts that were articulated by the officer …." *Martinez v. State*, 500 S.W.3d 456, 465-66 (Tex. App.—Beaumont 2016, pet. ref'd). Thus, regardless of whether the Ohio law was different, defense counsel was not ineffective for failing to specifically research the Ohio statute or argue that the Texas statute was inapplicable to Petitioner. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").

Finally, Petitioner's reliance on *United States v. Lopez-Valdez*, 178 F.3d 282 (5th Cir. 1999), for the proposition that Trooper Rhone lacked the authority to stop him, is misplaced. Doc. 28 at 5. In *Lopez-Valdez*, unlike this case, the observed defect in the taillight upon which the traffic stop was based was *not* a violation of the Texas Transportation Code and, consequently, did not provide probable cause to conduct the traffic stop. 178 F.3d at 288-89. Petitioner does not contest that his license plate was obscured in violation of Texas law. Instead, he argues only that Texas law did not apply to him or his vehicle.

Petitioner has not overcome the strong presumption that he received effective assistance of counsel at trial. The state court's denial of relief on the ineffective assistance claims raised here in Claims 1(a-c) was a reasonable application of federal law, therefore, Petitioner cannot prevail.

### b. Failure to Object – Claim 1(d)

Next, Petitioner asserts trial counsel rendered ineffective assistance when he failed to object at trial to Trooper Rhone's testimony or to the introduction of the seized marijuana. Doc. 20 at 8-9. However, Petitioner has not specified any objection counsel should have raised. To the contrary, Petitioner provides nothing more than conclusory allegations in support of his claim that defense counsel's performance fell below an objective level of reasonableness. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value."). And even if Petitioner could demonstrate deficient performance, he has not established a reasonable probability that, but for counsel's allegedly deficient performance, the result of the proceeding would have been different, and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable. *See Richter,* 562 U.S. at 103-05.

Thus, Petitioner has failed to demonstrate that the state court's decision implicitly rejecting his claim of ineffective assistance of counsel was unreasonable or involved the contrary application of federal law. Thus, again, he cannot prevail.

### c. Failure to Preserve Error for Appeal – Claim 1(f)

Lastly, Petitioner asserts trial counsel rendered ineffective assistance in failing to preserve for appellate review the legality of the stop and the admission of evidence resulting from the stop. Doc. 20 at 9-11. He argues that trial counsel neither filed a motion to suppress nor requested the trial court to rule on his former counsel's initial, general motion to suppress. Doc. 28 at 7-8. However, as previously discussed herein, the latter claim is unexhausted and the Fourth Amendment issues that Petitioner claims counsel should have preserved for review lack merit. *see* *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections."); *Green*, 160 F.3d 1029, 1037 (failure to make a frivolous objection is not deficient performance). Consequently, counsel was not deficient in failing to preserve the Fourth Amendment issues for appeal. Because Petitioner cannot demonstrate the state court's decision rejecting his ineffectiveness claim was unreasonable, his claim fails.

### D. Any Actual Innocence Claim is Not Cognizable Here

In his *Motion for Summary Judgment*, Petitioner asserts his "actual innocence" of the traffic violation that was the basis for the traffic stop, reiterating that the traffic stop was illegal and that it violated his Fourteenth Amendment right to due process. Doc. 29 at 4; *see also* Doc. 20 at 12. However, even if he had exhausted such claim, actual innocence is not cognizable as a freestanding federal habeas claim. *Reed v. Stephens*, 739 F.3d 753, 766-68 (5th Cir. 2014) (summarizing circuit precedent precluding freestanding actual innocence claim and considering actual innocence only in the context of procedurally defaulted claim); *Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006) ("[A]ctual-innocence is not an independently cognizable

federal-habeas claim."). Accordingly, to the extent Petitioner intends to raise an actual innocence claim, it is not cognizable.

### E. Evidentiary Hearing not Required

Also in his *Motion for Summary Judgment*, Petitioner appears to request an evidentiary hearing. Doc. 29 at 5. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court. Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court. Accordingly, he is not entitled to an evidentiary hearing.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DENIED**.

**SIGNED** March 21, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE